UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-80010-Smith/Matthewman

JIMMY HO,

      Petitioner,

vs.

SECRETARY OF DEPARTMENT OF
CORRECTIONS, STATE OF FLORIDA,

      Respondent.

_____/

**FILED BY**    *KJZ*    **D.C.**

*Nov 5, 2020*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PETITIONER'S PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY [DE 1]

THIS CAUSE is before the Court upon Petitioner, Jimmy Ho's ("Petitioner") Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") [DE 1] and Petitioner's Memorandum of Law in Support of Petition Filed under 28 U.S.C. § 2254 [DE 16]. The matter was referred to the undersigned by the Honorable Rodney Smith, United States District Judge. *See* DE 3. Respondent, Mark, S. Inch, Secretary, Department of Corrections ("Respondent") has filed a response to the Petition [DE 9], an Appendix [DE 10], and four transcripts [DE 11]. Petitioner has filed a reply [DE 14]. The Court has reviewed and carefully considered the Petition and accompanying Memorandum, the response, the reply, the transcripts, and all pertinent portions of the underlying criminal file.

### I.    WHETHER MOVANT IS ENTITLED TO AN EVIDENTIARY HEARING

As a preliminary matter, the Court finds that an evidentiary hearing is not required in this

1

case. "Because this habeas petition can be resolved by reference to the state court record there is no need for an evidentiary hearing." *Josey v. Inch*, No. 19-62510-CV, 2020 WL 2497884, at *3 (S.D. Fla. Apr. 22, 2020), *report and recommendation adopted,* No. 19-CV-62510, 2020 WL 2494642 (S.D. Fla. May 14, 2020) (citing 28 U.S.C. § 2254(e)(2)); *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (holding that, if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). Here, Petitioner has failed to demonstrate the existence of any factual disputes that warrant a federal evidentiary hearing. Therefore, Petitioner is not entitled to an evidentiary hearing and no evidentiary hearing shall be scheduled.

Further, the Court finds and RECOMMENDS that Movant's Petition be DENIED in its entirety as untimely, as well as on additional bases, as discussed in detail below.

## II.     BACKGROUND

This case originated in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. Petitioner was charged with first-degree murder with a firearm in violation of §782.04(1)(a)(1), Fla. Stat. (Count 1), and kidnapping with a firearm, in violation of §787.01(1)(a)(2), Fla. Stat. (Count 2). [DE 10, Ex. 2]. After a jury trial, he was found and adjudicated guilty on both counts on May 2, 2014. [DE 10, Ex. 19]. On May 2, 2014, he was sentenced to life imprisonment without parole on Count 1, with 1,187 days of jail credit, and life imprisonment without parole on Count 2, to run consecutive to Count 1. [DE 10, Ex. 20]. Petitioner is currently serving his sentence at the Everglades Correctional Institution in Miami, Florida.

On May 16, 2014, Petitioner filed a timely direct appeal. [DE 10, Ex. 21, 22]. He raised four issues: (1) that the trial court erred in denying his motion to suppress, (2) that the trial court

erred in denying his Motion for Judgment of Acquittal based on insufficient evidence of first degree murder by premeditation, (3) that the trial court erred in denying his Motion for Judgment of Acquittal based on insufficient evidence of kidnapping, and (4) that the issue of whether consecutive minimum mandatory sentences were required for separate felonies involving the discharge of a firearm was still pending on appeal. [DE 10, Ex. 23]. On September 14, 2016, the Fourth District Court of Appeal entered a written opinion affirming the judgment and sentence. *Ho v. State*, 201 So. 3d 726, 726 (Fla. 4th DCA 2016). The appellate court stated the following in that opinion:

> We affirm the trial court's ruling denying Appellant's motion to suppress. The trial court properly found that the initial knock and talk was not an arrest and that Appellant was not coerced by police action to speak with the officers, and thus Appellant's incriminating statements were freely given. Because the record further supports the trial court's decision to deny Appellant's motions for judgment of acquittal with respect to both the first degree murder and the kidnapping charges, as well as the sentence imposed, we affirm.

*Id.* at pp. 728-729.

On September 30, 2016, Petitioner filed a Pro Se Motion for Rehearing, which the Fourth District Court of Appeal denied on October 19, 2016. [DE 10, Ex. 26.]. A Mandate was issued on November 4, 2016. [DE 10, Ex. 27]. On December 21, 2016, Movant filed a *pro se* Motion to Modify/Reduce Sentence pursuant to Florida Rules of Criminal Procedure 3.800(c), which was denied on January 9, 2017. [DE 10, Ex. 28, 29].

On November 6, 2017, Petitioner filed in state court, through counsel, a Motion for Post-Conviction Relief pursuant to Florida Rules of Criminal Procedure 3.850(a). [DE 10, Ex. 30]. He raised three issues in that motion: (1) whether trial counsel provided ineffective assistance of counsel by failing to raise the issue of Petitioner's competency prior to trial, (2) whether trial

counsel provided ineffective assistance of counsel by advising Petitioner not to testify at trial, and (3) whether trial counsel provided ineffective assistance of counsel by failing to retain a gunshot residue expert. *Id.* On November 9, 2018, the motion was denied. [DE 10, Ex. 32]. Petitioner timely appealed [DE 10, Ex. 33, 34], but, on October 17, 2019, the Fourth District Court of Appeal affirmed the trial court's decision without opinion. *Ho v. State*, 282 So. 3d 93 (Fla. 4th DCA 2019). A Mandate was issued on November 15, 2019. [DE 10, Ex. 41].

Additionally, on November 5, 2018, Petitioner filed in state court a Petition for Relief Pursuant to Rule 9.141(d). [DE 10, Ex. 39, 40]. He argued that his appellate counsel had rendered ineffective assistance of counsel by failing to argue in Petitioner's appellate brief that the trial court erred in finding that the State's failure to disclose evidence and that the State's destruction of evidence was not a *Richardson*[1] violation. *Id.* The Fourth District Court of Appeal denied the petition on December 3, 2018. [DE 10, Ex. 41]. The instant Petition [DE 1] was filed in federal court on January 6, 2020.

### III. PETITION, RESPONSE, AND REPLY

#### A. The Petition [DE 1]

In the underlying Petition, Petitioner seeks federal habeas relief, arguing that (1) his constitutional rights were violated when the State failed to present sufficient evidence at trial and satisfy its burden of proof beyond a reasonable doubt; (2) he was denied his constitutional right to effective assistance of counsel when counsel failed to raise the issue of his competency prior to trial; (3) he was denied his constitutional right to effective assistance of counsel when counsel interfered with his constitutional right to testify on his own behalf at trial; (4) he was denied his

---

[1] *Richardson v. State*, 246 So.2d 771, 775 (Fla. 1971).

constitutional right to effective assistance of counsel when counsel failed to retain a gunshot residue expert; and (5) he was denied his constitutional right to effective assistance of appellate counsel when counsel failed to argue on appeal that the trial court erred in finding that the State's failure to disclose evidence and the State's destruction of evidence was not a *Richardson* violation.

## B. The State's Response [DE 16]

The State asserts numerous procedural and substantive challenges to the Petition. The State first asserts that the Petition is untimely. Next, it argues that the trial testimony was sufficient for a rational jury to find that Petitioner committed both first degree premeditated murder and kidnapping. The State also asserts that the trial court's denial of Petitioner's motion wherein he alleged that counsel was deficient for failing to investigate his competency was not contrary to clearly established federal law. Finally, the State contends that Petitioner failed to satisfy the requirements of *Strickland v. Washington*, 488 U.S. 688 (1984), as to Petitioner's trial counsel and that Petitioner's appellate counsel was not ineffective for failing to argue the *Richardson* issue.

## C. The Reply [DE 14]

In reply, Petitioner argues that the Petition was timely filed because he could not have sought review by the Florida Supreme Court because the Florida Supreme Court did not have subject matter jurisdiction. Petitioner additionally argues that he has presented more than conclusory allegations, that trial counsel's advice to not testify at trial was unreasonable and below professional norms, and that appellate counsel failed to argue the most critical issue on appeal— that the trial court abused its discretion by finding that a *Richardson* violation did not occur and by failing to find that the evidence was prejudicial to the Petitioner's case and violated his due process rights.

## IV.     ANALYSIS REGARDING TIMELINESS OF THE PETITION

The Antiterrorism and Effective Death Penalty Act, commonly referred to as "AEDPA,"

governs this proceeding. *See Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998)

(per curiam). AEDPA imposes a one-year statute of limitations on petitions for a writ of habeas

corpus filed by state prisoners. *See* 28 U.S.C. § 2244(d)(1). AEDPA provides that the limitations

period shall run from the latest of:

A. the date on which the judgment became final by the conclusion of direct review
   or the expiration of the time for seeking such review;

B. the date on which the impediment to filing an application created by State action
   in violation of the Constitution or laws of the United States is removed, if the
   applicant was prevented from filing by such action;

C. the date on which the constitutional right asserted was initially recognized by
   the Supreme Court, if that right has been newly recognized by the Supreme
   Court and made retroactively applicable to cases on collateral review; or

D. the date on which the factual predicate of the claim or claims presented could
   have been discovered through the exercise of due diligence.

*See also Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012) ("28 U.S.C. § 2244(d)(1)(A), establishes a

1–year limitations period for state prisoners to file federal habeas petitions, running from 'the date

on which the judgment became final by the conclusion of direct review or the expiration of the

time for seeking such review.'").

The limitations period is tolled, however, for "[t]he time during which a properly filed

application for post-conviction or other collateral review with respect to the pertinent judgment or

claim is pending...." 28 U.S.C. § 2244(d)(2). Thus, this petition is time-barred, pursuant to 28

U.S.C. § 2244(d)(1)(A), unless the appropriate limitations period was extended by properly filed

applications for state post-conviction or other collateral review proceedings. *See* 28 U.S.C. § 2244(d)(2).

The Court has carefully reviewed Petitioner's and the State's arguments on this issue. Petitioner clearly did not seek discretionary review from the Florida Supreme Court after his conviction and sentence was affirmed by the Fourth District Court of Appeal. The real dispute is whether or not Petitioner was still entitled to an additional ninety days to seek a writ of certiorari in the Supreme Court of the United States despite his failure to seek such discretionary review from the Florida Supreme Court. *See Moore v. Crews*, No. 13-14482-CIV-MARTINEZ, 2014 WL 12651190, at *1 (S.D. Fla. Apr. 3, 2014), *report and recommendation adopted,* No. 13-14482-CIV, 2014 WL 12652325 (S.D. Fla. May 7, 2014) (which held that a petitioner who did not seek discretionary review to the Florida Supreme Court was not entitled to an additional ninety days to file a petition for a writ of certiorari in the United States Supreme Court). According to Petitioner, he did not seek such review because the Florida Supreme Court would not have had subject matter jurisdiction over his appeal. Thus, Petitioner argues that he should receive the benefit of the 90-day period to file a writ of certiorari in the United States Supreme Court, which makes his Petition timely.

The analysis as to whether the Florida Supreme Court would have had subject matter jurisdiction over his appeal controls the date that Petitioner's conviction became final. The State, taking into consideration the tolled and un-tolled time in this case given the various filings by Petitioner, argues that the Petition was filed 39 days too late and is thus untimely.[2] [DE 9, p. 8]. Petitioner, however, argues that, since the Florida Supreme Court would not have had jurisdiction

---

[2] In Petitioner's reply, he does not object to this calculation of un-tolled days.

7

to hear his appeal from the Fourth District Court of Appeal's affirmance of his conviction and sentence, the 90-day time period to seek a writ of certiorari to the United States Supreme Court applied (rather than the 30-day time period for seeking review in the Florida Supreme Court). Therefore, according to Petitioner, his conviction became final later than asserted by the State, and the State's argument fails because his Petition is timely. This argument about the Florida Supreme Court's lack of jurisdiction is, in fact, Petitioner's sole argument to support his contention that the Petition was timely filed.

It is clear that the Florida Supreme Court "[m]ay review any decision of a district court of appeal that expressly declares valid a state statute, or that expressly construes a provision of the state or federal constitution, or that expressly affects a class of constitutional or state officers, or that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law." Fla. Const. art. V, § 3. The parties disagree on the issue of whether Petitioner could have appealed to the Florida Supreme Court from the Fourth District Court of Appeal's affirmance of his conviction and sentence based on these jurisdictional limitations.

The State relies on the federal case of *Dailey v. Crews*, No. 3:13CV148-WS/EMT, 2014 WL 2158428 (N.D. Fla. May 23, 2014), to support its argument that the Petition is untimely. In *Dailey*, the court explained that the First District Court of Appeal's affirmance of the petitioner's conviction was "not unelaborated" and "was accompanied by a discussion of the facts in the case." *Id.* at * 4. The court explained that, because the appellate opinion contained sufficient discussion of facts, the "Florida Supreme Court could have considered whether the decision 'expressly and directly conflict[ed] with a decision of another district court of appeal or of the supreme court on

the same question of law,' thus invoking the court's discretionary jurisdiction." *Id.* (quoting *Jenkins v. State,* 385 So.2d 1356, 1359 (Fla. 1980)). The *Dailey* court concluded that, since the petitioner "did not attempt to invoke the Florida Supreme Court's discretionary jurisdiction...his conviction became final, for purposes of § 2244(d)(1)(A), on November 25, 2010, upon expiration of the 30–day period for seeking review in the Florida Supreme Court." *Id.*

Petitioner relies on two Florida state cases, *Carter v. State*, 331 So.2d 293 (Fla. 1976), and *Gandy v. State*, 846 So.2d 1141 (Fla. 2003), to support his position that the Florida Supreme Court would not have had subject matter jurisdiction to hear his appeal. In *Carter*, the Florida Supreme Court found that it lacked subject matter jurisdiction when the appellate court's decision was "merely a one paragraph recitation of facts followed by a statement that the evidence justifies the jury's verdict. There is not one citation of legal authority, and no reference to the principles of law which the district court applied." *Carter*, 331 So. 2d at 294. In *Gandy*, the Florida Supreme Court held that it does "not have jurisdiction to review per curiam unelaborated denials of relief from the district courts of appeal that…merely cite to a case not pending on review in this Court, or to a statute or rule of procedure, and do not contain any discussion of the facts in the case such that it could be said that the district court 'expressly addresse[d] a question of law within the four corners of the opinion itself.'" *Id.* at 1144. (quoting *Florida Star v. B.J.F.*, 530 So.2d 286, 288 (Fla. 1988)).

The Court has identified several relevant Southern District of Florida cases that discuss this area of the law. For example, in *Flynn v. Tucker*, No. 11-22765-CIV, 2012 WL 4863051 (S.D. Fla. Oct. 11, 2012), the court explained that an appellate opinion from the Third District Court of Appeal affirming the petitioner's conviction was *per curiam* and without written opinion and noted

9

that the "Florida Supreme Court has held that it does not have jurisdiction to review 'unelaborated per curiam decisions issued by a district court of appeal.'" *Id.* at * 3 (citing *Jackson v. State,* 926 So.2d 1262, 1263, 1266 (Fla. 2006)). The court explained that, since the Florida Supreme Court did not have subject matter jurisdiction to hear an appeal, and the petitioner "could not have appealed to the highest State court as such an appeal would have been futile." *Id.* (citing *Clifton v. Sec'y, Dep't of Corr.,* No. 6:10-CV-539-ORL-36, 2012 WL 3670264, at *5, n. 3 (M.D. Fla. Aug. 27, 2012)). There are a plethora of additional cases in this District citing the same body of law. *See, e.g.*, *Keeler v. Jones*, No. 15-60333-CIV, 2016 WL 11688066, at *5 (S.D. Fla. Jan. 12, 2016), *report and recommendation adopted,* No. 15-60333-CIV, 2018 WL 10798972 (S.D. Fla. Mar. 15, 2018); *de la Sota-Rivera v. Jones*, No. 17-60066-CIV, 2018 WL 9649832, at *4 (S.D. Fla. July 9, 2018), *report and recommendation adopted,* No. 17-60066-CIV, 2018 WL 9649793 (S.D. Fla. Aug. 21, 2018).

The Court has carefully reviewed the Fourth District Court of Appeal opinion regarding Petitioner, *Ho v. State*, 201 So. 3d 726 (Fla. 4th DCA 2016). The Court finds that the appellate court in *Ho* issued a written opinion rather than a simple *per curiam* opinion. The *Ho* opinion contains both detailed, elaborated facts and citations to the law. The Court, therefore, rejects Petitioner's assertion that he could not have sought discretionary review from the Florida Supreme Court. The case at hand is factually similar to the case of *Dailey v. Crews*, cited by the State. The appellate opinion at issue in this case is very clearly NOT an unelaborated *per curiam* decision. Thus, Petitioner could have sought discretionary review to the Florida Supreme Court, and, since he failed to do so, his Petition is untimely, as further explained below.

Here, the Fourth District Court of Appeal affirmed Petitioner's judgment and sentence on

10

September 14, 2016. Petitioner filed a motion for rehearing, which was denied on October 19, 2016. Petitioner did not seek discretionary review from the Florida Supreme Court. In light of the undersigned's above findings, the time for seeking such discretionary review with the Florida Supreme Court expired thirty days after the denial of rehearing, or no later than **November 18, 2016**. Since the Petition [DE 1] was filed on January 6, 2020, it "is untimely unless the limitations period was extended by properly filed applications for state post-conviction or other collateral review proceedings. 28 U.S.C. § 2244(d)(2)." *Smith v. McNeil*, No. 08-61918-CIV, 2009 WL 4629164, at *3 (S.D. Fla. Dec. 2, 2009).

The Court must therefore analyze any such properly filed applications for state post-conviction or other collateral review proceedings.

a) **<u>Petitioner's Rule 3.800(c) Motion</u>**: Petitioner filed a Rule 3.800(c) motion to mitigate his sentence on December 21, 2016, which was denied on January 9, 2017. The motion did not attack the legality of the underlying conviction, so it did not toll Petitioner's time. *See Kidd v. Jones*, No. 15-22588-CIV-GAYLES, 2016 WL 3627330, at *2 (S.D. Fla. May 9, 2016), *report and recommendation adopted,* No. 15-22588-CIV, 2016 WL 3544615 (S.D. Fla. June 29, 2016) (finding that a motion for mitigation of sentence pursuant to Florida Rule of Criminal Procedure 3.800(c) had no tolling effect); *see also Baker v. McNeil*, 439 F. App'x 786 (11th Cir. 2011) (holding that a motion to modify sentence under Rule 3.800(c) does not toll limitations period). Since Petitioner's Rule 3.800(c) Motion only addressed his sentence, and not his conviction, no tolling of the limitations period occurred.

b) **<u>Petitioner's Motion for Post-Conviction Relief</u>**: Petitioner then filed a motion for

post-conviction relief on November 6, 2017, which was denied on November 9, 2018, which he then appealed to the Fourth District Court of Appeal. While time <u>was not</u> tolled from November 18, 2016,[3] to November 6, 2017[4] (for a total of 353 days of un-tolled time), time <u>was</u> tolled from **November 6, 2017**, through **November 15, 2019**, the date upon which a mandate was issued by the Fourth District Court of Appeal after the appellate court affirmed the trial court's decision denying Petitioner's motion for post-conviction without opinion.[5] Petitioner thus had 12 remaining days to file his § 2254 Petition in this Court after the mandate was issued as 353 un-tolled days had already elapsed. Petitioner was, therefore, required to file his Petition on or about **November 28, 2019**. Instead, the Petition was filed on January 6, 2020. The Petition is thus time barred.

Finally, the one-year limitations period set forth in § 2244(d) "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling only applies in "rare and exceptional cases." *Rodriguez v. Crews*, No. 13-14211-CIV, 2014 WL 11430873, at *2 (S.D. Fla. Jan. 14, 2014), *report and recommendation adopted,* No. 13-14211-CIV, 2014 WL 11456095 (S.D. Fla. Aug. 21, 2014), *aff'd sub nom. Rodriguez v. Sec'y, Fla. Dep't of Corr.*, 631 F. App'x 735 (11th Cir. 2015) (quoting *Lawrence v. Florida*, 549 U.S. 327 (2007); *Helton v. Sec'y, Dep't of Corr.*, 259 F.3d 1310, 1312 (11th Cir. 2001)). "For equitable tolling to apply, a petitioner has the burden of proving: '(1) that he ha[d] been pursuing his rights diligently, and (2) that some

---

[3] November 18, 2016 is 30 days after the Fourth DCA's denial of rehearing.
[4] November 6, 2017 is the date Petitioner filed his motion for post-conviction relief in state court.
[5] The undersigned also notes that Petitioner filed a petition alleging ineffective assistance of his appellate counsel on November 5, 2018, which was denied on December 3, 2018. Since the petition was pending during a time period that was already tolled, this petition has no effect on the Court's analysis.

extraordinary circumstances stood in his way and prevented timely filing.'" *Id.* (quoting *Lawrence*, 549 U.S. at 336). Petitioner has not made any argument whatsoever about equitable tolling, let alone met his burden. Similarly, Petitioner has not made an argument regarding "actual innocence," and the Court notes that "[t]o establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable [trier of fact] would have convicted him.' *Schlup v. Delo*, 513 U.S. 298, 327-328(1995)." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "[T]he *Schlup* standard is demanding and permits review only in the "'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). Petitioner clearly has not met this standard. In sum, no exceptions to the statute of limitations period exist in this case.

Finally, the Court notes that Petitioner does make an alternative argument in his reply that "the Florida Supreme Court did not have jurisdiction over the entirety of Mr. Ho's case because he raised four issues in his direct appeal and only one of those issues was addressed in the written opinion." [DE 14, pp. 3-4]. In effect, he contends that the Fourth District Court of Appeal issued a *per curiam* affirmance as to three of the issues he appealed and an elaborated written opinion as to one issue. This alternative argument is not well-briefed by Petitioner, and he has cited no case law that specifically supports his argument.[6] The Court agrees that the appellate court only addressed in detail one of the four issues that Petitioner raised in his direct appeal; however, it seems that, at the very least, Petitioner was required to seek discretionary review on the motion to

---

[6] This would include case law that explains that an appellate court's opinion can be considered to be a partial *per curiam* affirmance and a partial elaborated opinion, or case law that establishes that *per curiam* status is issue-based versus opinion-based. The sole case cited by Petitioner is *Gandy v. State*, 846 So.2d 1141 (Fla. 2003), for the premise that "per curiam affirmance decisions without further written opinions or unelaborated denials of relief are not subject to discretionary review in the Florida Supreme Court." The *Gandy* opinion does not truly support Petitioner's argument.

suppress issue, which was analyzed in detail. Yet, Petitioner failed to do so.

Accordingly, the undersigned finds that the Petition is time-barred. However, in light of Petitioner's alternative argument contained for the first time in his reply regarding a supposed partial *per curiam* affirmance, the undersigned finds it prudent to consider each of Petitioner's additional substantive claims in this Report and Recommendation even though the Court has found the Petition to be time barred. Therefore, the undersigned will analyze the substantive issues raised in the Petition in the event the reviewing court finds that the Petition is not, in fact, time-barred. This will promote judicial and attorney economy.

## V.  ANALYSIS REGARDING PETITIONER'S SUBSTANTIVE CLAIMS

Pursuant to 28 U.S.C. § 2254(d), an individual in state custody is entitled to federal habeas corpus relief only on the ground that he is in custody in violation of the United States Constitution or laws or treaties of the United States. To obtain habeas corpus from a federal court, a prisoner must demonstrate that the state court's ruling on the claim: 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)-(2) (2018); *see also Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Fugate v. Head*, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

"A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in this Court's cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams*, 529 U.S. at 405-06. "A state-court

decision involves an unreasonable application of this Court's clearly established precedents if the state court applies such precedents to the facts in an objectively unreasonable manner." *Id.* In the context of habeas petitions, "clearly established Federal law" refers to the holdings of the Supreme Court's decisions as of the time of the relevant state court decision. *Hall v. Head*, 310 F.3d 683, 690 (11th Cir. 2002) (citing Williams, 529 U.S. at 412). Federal courts are required to presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

The Supreme Court repeatedly has held that "[t]he petitioner carries the burden of proof" and that the § 2254(d)(1) standard is a high hurdle to overcome. *See Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)); *Cullen v. Pinholster*, 563 U.S. 170, 180 131 (2011). State court decisions must be given a strong presumption of deference even when the state court adjudicates a petitioner's claim summarily. *See Richter*, 560 U.S. at 96-100; *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011).

i.   <u>Claim 1: Whether the State failed to present sufficient evidence at trial and satisfy its burden of proof beyond a reasonable doubt</u>

Petitioner asserts that he was "denied his constitutional right to be found guilty beyond a reasonable doubt when the State failed to satisfy its burden of proof at trial." [DE 16, p. 8]. With regard to the premeditated murder conviction, Petitioner argues that he "presented a prima facie case of self defense based on his statement to the police that he became scared at the berserk behavior of the decedent, her demands for all his money, her claims that her boyfriend was in the apartment and his belief that she was going for a knife." *Id.* at pp. 12-13. Petitioner also argues that "[n]o evidence was presented by the state evincing any ill will between appellant and the

decedent. There was no testimony or statements indicating that the Petitioner had leveled any threats against the decedent. There was no evidence that the Petitioner planned the homicide in some preconceived fashion. The state did not refute the Petitioner's assertion of self defense and there was insufficient proof of a premeditated attack." *Id.* at p. 13. According to Petitioner, "[w]ithout said evidence, it is a violation of the Petitioner's due process rights to sustain the current conviction and sentence that he is serving." *Id.* With regard to the kidnapping conviction, Petitioner argues that "[t]he confinement in the present case did not amount to kidnapping as this crime was inconsequential and incidental to the homicide, is not inherent in the nature of homicide and certainly did not make the homicide easier to commit or lessen the risk of detection. As a result, the Petitioner's conviction for kidnapping cannot stand because it violates his due process rights. As a result, this Court should vacate his judgment and sentence accordingly." *Id.* at p. 14.[7]

In response, the State first argues that Petitioner made a similar claim in his direct appeal, that this claim was presented as a violation of state law and did not raise any federal constitutional claims, and that the presentation of the claim failed to alert the state court of the federal nature of the claim and, thus, the claim is not properly exhausted. [DE 9, p. 10]. Next, the State lays out the evidence presented at trial and argues that "[t]aken in the light most favorable to the State, the trial testimony was sufficient for a rational jury to find the Petitioner committed both first degree premeditated murder and kidnapping." *Id.* at p. 21. The States also contends that "[i]t is clear from the circumstances and the evidence presented that the trial court properly denied the motion for judgment of acquittal with respect to premeditation and submitted this case to the jury." *Id.* at p. 24. With regard to the kidnapping conviction, the State argues that, in this case, "the restraint of

---

[7] Petitioner opted not to make any further argument about Claim 1 in his Reply [DE 14].

[the] victim with handcuffs, completely immobilizing her arms and hands, was not slight, inconsequential, or merely incidental to murder, was not inherent in the nature of the murder, and also had independent significance in that the handcuffs made the shooting substantially easier to commit, as the victim was prevented from fighting back." *Id.* at p. 26. Finally, the State asserts that the "evidence here was sufficient to prove both premeditated first-degree murder and kidnapping, as found by the jury, and the reviewing court agreed," so the only determination for this Court to make is whether the state court's findings were "objectively unreasonable." *Id.*

In Petitioner's May 16, 2014 direct appeal, he raised the issue of whether the trial court erred in denying his motions for judgment of acquittal based on insufficient evidence of first degree murder by premeditation and insufficient evidence of kidnapping. [DE 10, Ex. 23]. On September 14, 2016, the Fourth District Court of Appeal entered a written opinion affirming the judgment and sentence. *Ho v. State*, 201 So. 3d 726 (Fla. 4th DCA 2016). The appellate court found in relevant part, "[b]ecause the record further supports the trial court's decision to deny Appellant's motions for judgment of acquittal with respect to both the first degree murder and the kidnapping charges, as well as the sentence imposed, we affirm." *Id.* at 728-729. On September 30, 2016, Petitioner filed a Pro Se Motion for Rehearing, which the Fourth District Court of Appeal denied on October 19, 2016. [DE 10, Ex. 26.]. A Mandate was issued on November 4, 2016. [DE 10, Ex. 27].

As an initial matter, it appears that Petitioner waived and failed to exhaust his current claim when he argued on direct appeal that the trial court erred in denying his motions for judgment of acquittal based on insufficient evidence because Petitioner cited to no federal law whatsoever in his direct appeal. *See Cascante v. Fla.*, 816 F. App'x 429, 431 (11th Cir. 2020) (holding that,

because the petitioner did not raise any federal claims or cite to any federal cases in state court when presenting his argument on the sufficiency of the evidence, he failed to fairly present his federal sufficiency-of-the-evidence claim to the Florida state courts and thus did not exhaust his state court remedies as to that claim); *Preston v. Secretary, Florida Department of Corrections*, 785 F.3d 449, 451 (11th Cir. 2015) (finding that the petitioner failed to exhaust his state court remedies because he "did not even hint ... that he intended to raise a federal claim," as he: (1) did not rely on a single federal case, but relied only on Florida cases discussing premeditation under Florida law; (2) never mentioned the federal Due Process Clause or any other federal constitutional provision; and (3) did not cite to, or mention, the standard from *Jackson v. Virginia* for assessing sufficiency-of-the-evidence claims).

Even though the undersigned finds that this claim should be denied as Petitioner waived the claim by failing to exhaust his state court remedies, the undersigned will also discuss the merits of the claim. "On a petition for federal habeas corpus relief, the standard for review of the sufficiency of the evidence is whether the evidence presented, viewed in a light most favorable to the state, would have permitted a rational trier of fact to find the petitioner guilty of the crimes charged beyond a reasonable doubt." *Jenkins v. Jones*, No. 15-23258-CIV, 2016 WL 10720162, at *14–15 (S.D. Fla. Mar. 14, 2016), *report and recommendation adopted*, No. 15-23258-CIV, 2016 WL 10720336 (S.D. Fla. Mar. 31, 2016) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979); *Simmons v. State*, 934 So.2d 1100, 111 (Fla. 2006)). The *Jackson* standard for the sufficiency of the evidence applies equally to direct or circumstantial evidence. *Jackson*, 443 U.S. at 320; *United States v. Peddle*, 821 F.2d 1521, 1525 (11th Cir. 1987). The fact that the evidence provides some support to the petitioner's theory of innocence does not warrant the granting of habeas relief, and

18

it is not necessary that the evidence exclude every single reasonable hypothesis except that of guilt. *Wilcox v. Ford*, 813 F.2d at 1143 (citing *Martin v. State of Alabama*, 730 F.2d 721, 724 (11th Cir. 1984)); *Holland v. United States*, 348 U.S. 121, 140 (1954).

Thus, when the federal court is reviewing a habeas question, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (quotation omitted). The Supreme Court has determined that there are two layers of judicial deference in federal habeas proceedings. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). "First, a reviewing court on direct appeal may only set aside the jury's verdict for insufficient evidence if no rational trier of fact could have agreed with the jury. Second, a federal habeas court may only overturn the state court decision if it was objectively unreasonable. The Court went on to explain that the only question for the reviewing [ ] court under *Jackson* is 'whether the finding was so insupportable as to fall below the threshold of bare rationality.'" *Jenkins*, 2016 WL 10720162, at *14–15 (citing *Coleman*, 566 U.S. at 656).

Here, the evidence clearly would have permitted a rational trier of fact to find Petitioner guilty of premeditated murder and kidnapping beyond a reasonable doubt. The Court particularly relies on the post-*Miranda* statement Petitioner made to Detectives Crawford and Anderson, which was played for the jury at trial. [DE 11-1, pp. 1125-1158]. Petitioner admitted to placing handcuffs on the victim, later uncuffing her, engaging in a struggle with the victim, which caused Petitioner's gun to go off, and then leaving the victim bleeding on the bed. *Id.* at pp. 1135-37. He also admitted to throwing his gun into the canal. *Id.* at p. 1139. Finally, he admitted to shooting the victim from less than two feet away. *Id.* at p. 1146. In light of the record evidence, the Court finds that the

19

Fourth District Court of Appeal did not make an objectively unreasonable decision in affirming the trial court's denial of Petitioner's motions for judgment of acquittal.

    ii.    <u>Claim 2: Whether Petitioner was denied his constitutional right to effective assistance of counsel when counsel failed to raise the issue of Petitioner's competency prior to trial</u>

Petitioner asserts that trial counsel was ineffective for failing to raise the issue of Petitioner's competency prior to trial. However, a petitioner will not be entitled to relief on an ineffective assistance of counsel claim unless it is shown that the state court's conclusion as to counsel's performance was contrary to, or an unreasonable application of, clearly established federal law. *Evans v. Secretary, Dept. of Corrections*, 703 F.3d 1316, 1326 (11th Cir. 2013).

"In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. Under the 'performance' prong, the defendant must show that counsel's performance 'fell below an objective standard of reasonableness.'" *King v. U.S.*, 250 F. App'x. 930, 932 (11th Cir. 2007) (citing *Strickland*, 466 U.S. at 688.) "Under the 'prejudice' prong, the defendant must show that counsel's deficient performance actually prejudiced the defendant and that, "but for the attorney's error, the outcome of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). The burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable. *See Strickland,* 466 U.S. at 688. The petitioner must establish that particular and identified acts or omissions of counsel "were outside the wide range of professionally competent assistance." *Chandler v. United States*, 218 F.3d 1305, 1313–14 (11th Cir. 2000) (quoting *Burger v. Kemp,* 483 U.S. 776, 794 (1987); *see also Strickland,* 466 U.S. at 686 (stating that petitioner must show "counsel's representation fell below an objective standard

of reasonableness", which means that counsel's performance was unreasonable "under prevailing professional norms ... considering all of the circumstances").

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. When assessing a lawyer's performance, "[c]ourts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Chandler,* 218 F.3d at 1314 (11th Cir. 2000). When assessing ineffective assistance of counsel claims, the court's role is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within the wide range of professionally competent assistance." *Van Poyck v. Florida Dept. of Corrections,* 290 F.3d 1318, 1322 (11th Cir.2002) (quoting *Strickland,* 466 U.S. at 690 (internal quotation marks omitted)). "Intensive scrutiny and second-guessing of attorney performance are not permitted." *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994).

If a petitioner's claim of ineffectiveness turns on whether counsel should have raised issues of state law, § 2254(d) requires that the federal court defer to the state court's decision regarding its own laws. *See Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superseded by statute on other grounds). It is "a fundamental principle state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *See Herring v. Sec'y, Dept. of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

21

"Combining AEDPA's habeas standard and *Strickland*'s two-pronged test provide the relevant inquiry in this case. To obtain habeas relief, a petitioner must show the state court 'applied *Strickland* to the facts of his case in an objectively unreasonable manner' when it rejected his claims of ineffective assistance of counsel." *Green-Anderson v. Inch*, No. 19-CV-80421, 2020 WL 4208044, at *4–6 (S.D. Fla. July 22, 2020) (quoting *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

"The issue of a defendant's competency to stand trial raises due process concerns. *Card v. Singletary*, 981 F.2d 481, 484 (11th Cir. 1992) (citing *Bruce v. Estelle*, 483 F.2d at 1036; *Drope v. Missouri*, 420 U.S. 162, 171-72 (1975)). "In *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), the Supreme Court defined the contours of this due process right, holding that the test for determining competence to stand trial is 'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of understanding-and whether he has a rational as well as factual understanding of the proceedings against him.'" *Id.*

In order for a petitioner to establish prejudice from his attorney's failure to have him evaluated for competency, the petitioner "has to show that there was at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial." *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988) (citing *Adams v. Wainwright,* 764 F.2d 1356, 1367 (11th Cir.1985), *cert. denied,* 474 U.S. 1073, 106 (1986)). Conclusory allegations that a petitioner was incompetent to stand trial are insufficient; the petitioner is required to demonstrate "a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial." *Id.* The standard of proof is high. The facts must "positively, unequivocally and clearly generate" the legitimate doubt. *Witten v. United States*, No. 13-CR-10022, 2019 WL 4453624, at *32 (S.D. Fla. Mar. 7, 2019), *report and recommendation*

22

*adopted*, No. 13-CR-10022-JEM, 2019 WL 4453360 (S.D. Fla. May 8, 2019). Defense counsel's "failure to raise the competency issue is persuasive evidence that [a movant's] mental competence was not in doubt and therefore he is not entitled to an evidentiary hearing." *Adams v. Wainwright*, 764 F.2d 1356, 1360 (11th Cir. 1985); *see also Reese v. Wainwright*, 600 F.2d 1085, 1092 (5th Cir. 1979).

Petitioner argues that he "established that counsel should have investigated his competency because of the circumstances surrounding the Petitioner's arrest." [DE 16, p. 16]. Petitioner explains that, when he was arrested, he was booked into county jail, but then was transferred to the mental health ward after he attempted to commit suicide. *Id.* Petitioner then remained in the mental health ward for the entire time that his case was pending and was placed in the mental health ward upon his transfer to the Department of Corrections. *Id.* According to Petitioner, during his case, "there were several times where the [he] could not assist counsel with his defense and could not understand the consequences he faced. Upon realizing these issues, trial counsel should have challenged the Petitioner's competency." *Id.* He additionally claims that "[t]here were times that [he] went to trial counsel and tried to tell her that he was confused about what was going on in his case" and that he "had delusional thoughts and was not competent at the time he went to trial." [DE 1, p. 9].

The State responds that Petitioner's "conclusory allegations that there were times he was confused" and that "he could not assist counsel" are "not sufficient to meet his burden." [DE 9, p. 28]. The State also argues Petitioner has not met his burden by explaining that he attempted suicide and was placed in the mental health ward in the jail. *Id.* at pp. 28-29.

In reply, Petitioner contends that he has provided "much more than conclusory allegations

that he was incompetent" and that he "had delusional thoughts throughout his case that resulted in his inability to assist counsel in a defense." [DE 14, p. 5]. He points out the attempted suicide and that he was transferred to the mental health ward at the county jail. *Id.* He then "remained in the mental health ward the entire time that his case was pending because he was mentally ill." *Id.* Further, Petitioner points out that he "alleged that he had delusional thoughts throughout his case that resulted in his inability to assist counsel in a defense. Mr. Ho, because of these delusional thoughts, did not trust counsel or the legal process. Mr. Ho's delusions became so severe that counsel had to go behind Mr. Ho's back and communicate with his family about Mr. Ho's mental condition." *Id.*

Petitioner already raised this issue in his Motion for Post-Conviction Relief [DE 10, Ex. 30, pp. 8-10] dated November 6, 2017. On November 9, 2018, the motion was denied. [DE 10, Ex. 32]. The Court rejected Petitioner's arguments about his alleged delusions, his suicide attempt, and the fact that he was kept in mental health wards and adopted the State's arguments in opposition. *Id.* Petitioner timely appealed [DE 10, Ex. 33, 34], but, on October 17, 2019, the Fourth District Court of Appeal affirmed the trial court's decision without opinion. *Ho v. State*, 282 So. 3d 93 (Fla. 4th DCA 2019). A Mandate was issued on November 15, 2019 [DE 10, Ex. 41].

With regard to Petitioner's attempted suicide, the State relies on *Drope v. Missouri*, 420 U.S. 162 (1975), for the premise that the fact that an individual has attempted suicide does not, by itself, establish a reasonable doubt of competence to stand trial. *Id.* at 180 ("We need not address the Court of Appeals' conclusion that an attempt to commit suicide does not create a reasonable doubt of competence to stand trial as a matter of law. As was true of the psychiatric evaluation, petitioner's attempt to commit suicide 'did not stand alone.'") (citing *Moore v. United States*, 464

F.2d 663, 666 (9th Cir. 1972)).

The undersigned finds that Petitioner has not established either deficient performance or prejudice from his attorney's failure to have him evaluated for competency. In light of the applicable case law, Petitioner's attempted suicide is not a sufficient fact, in and of itself, to meet his high burden. Petitioner has simply made conclusory statements that he was incompetent to stand trial because he was delusional, because he attempted suicide, and because he was placed in mental health wards. In sum, Petitioner has failed to meet his burden of establishing that his trial counsel either performed deficiently or prejudiced him by failing to have Petitioner's competency evaluated.

    iii.    <u>Claim 3: Whether Petitioner was denied his constitutional right to effective assistance of counsel when counsel allegedly interfered with Petitioner's constitutional right to testify on his own behalf at trial</u>

Petitioner argues that his attorney and the attorney's assistant "essentially told the Petitioner and encouraged him not to testify at trial. Trial counsel did not give the Petitioner a reason why, but made it clear that was what she thought was best. The Petitioner, who was not an attorney and didn't know to disagree, felt like he had to listen to her advice. As a result of said advice, the Petitioner did not testify." [DE 16, p. 18]. Petitioner argues that his testimony would have supported his claims that "(1) he did not have any intent to harm the victim and (2) that his actions were in self-defense." *Id.* at p. 19. He contends that, had he testified, the "jury would have found him not guilty or guilty of a lesser-included offense. Thus, but for trial counsel's actions, the outcome of the proceedings would have been different." *Id.*

The State argues in response that "[a] review of the transcript this case conclusively establishes that the trial court explained the decision to testify or not was entirely up to Petitioner.

(T1. 1599-1603/PDF 852-56.)." [DE 9, p. 29]. The State additionally argues that Petitioner has not

met his burden under either prong of *Strickland* to establish ineffective assistance of counsel. *Id.*

at pp. 31-33.

"A claim that a defendant's right to testify was violated by defense counsel is analyzed as

a claim of ineffective assistance of counsel." *Topete v. United States*, 628 F. App'x 1028, 1029

(11th Cir. 2015) (citing *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992)). "Under

the first prong of [ ] *Strickland*, an attorney is deficient if counsel refused to accept the defendant's

decision to testify and refused to call him to the stand to testify or, alternatively, where counsel

never informed the defendant of his right to testify and that the ultimate decision belonged to the

defendant alone." *Kenon v. Jones*, No. 18-14243-CV, 2020 WL 4487468, at *11 (S.D. Fla. May

20, 2020), *report and recommendation adopted in part sub nom. Kenon v. Inch*, No. 2:18-CV-

14243, 2020 WL 4476406 (S.D. Fla. Aug. 4, 2020) (citing *Teague*, 953 F.2d at 1532). "The

prejudice *Strickland* prong requires a showing that, but for counsel's deficiency, the outcome of

Petitioner's trial would have been different." *Id.* (citing *Teague*, 953 F.2d at 1532).

Petitioner already raised this issue in his Motion for Post-Conviction Relief [DE 10, Ex.

30, pp. 10-12] dated November 6, 2017. On November 9, 2018, the motion was denied, and the

trial court adopted the State's arguments in opposition. [DE 10, Ex. 32]. Petitioner timely appealed

[DE 10, Ex. 33, 34], but, on October 17, 2019, the Fourth District Court of Appeal affirmed the

trial court's decision without opinion. *Ho v. State*, 282 So. 3d 93 (Fla. 4th DCA 2019). A Mandate

was issued on November 15, 2019. [DE 10, Ex. 41].

The undersigned has fully reviewed the relevant portion of the record. During trial, the

state court judge conducted a full colloquy with Petitioner regarding his right to testify. [DE 11-1,

26

pp. 600-602]. The judge explained that "there are certain decisions that a defendant makes, or more properly, an attorney can make for a defendant, which are strategic, but there are certain decisions that are fundamental, which means they really lie with the defendant. The decision as to whether to testify and/or not testify is one of those fundamental decisions; in other words, a decision you must make for yourself." *Id.* at 1601. The judge further explained to Petitioner as follows: "you have an absolute right to testify if you choose to testify. You also have an absolute right not to testify, and if you do not testify, the jury cannot use that against you in any manner, and not consider it in any manner, and cannot draw any inferences of guilt from that." *Id.* at p. 1602. At the conclusion of the colloquy the judge asked Petitioner is he wished to testify, and he stated that he had decided not to testify. *Id.* at p. 1602.

Petitioner cannot satisfy *Strickland*'s deficient performance or prejudice prong since the trial court conducted a thorough colloquy with Petitioner. Petitioner then indicated that he was voluntarily choosing to waive his right to testify on his own behalf at trial. Therefore, the record demonstrates that Petitioner's decision not to testify was voluntary and knowingly made, without any deficiency on counsel's part. *See Jorge v. Jones*, No. 17-22172-CIV, 2018 WL 10788538, at *42 (S.D. Fla. Oct. 22, 2018), *report and recommendation adopted,* No. 1:17-CV-22172-JLK, 2018 WL 10788536 (S.D. Fla. Dec. 19, 2018). Moreover, the Court cannot conclude, on the basis of this colloquy, that Petitioner's counsel refused to accept his decision to testify or never informed him of his right to do so. *See Gallego*, 174 F.3d at 1197. Finally, Petitioner does not allege he was coerced. Thus, his claim for ineffective assistance of counsel must fail. *See Ayalavillamizar v. Jones*, No. 16-62965-CIV, 2018 WL 11189630, at *6 (S.D. Fla. Apr. 24, 2018) (citing *Lambrix v. Singletary*, 72 F.3d 1500, 1508 (11th Cir. 1996) ("Without evidence that [Petitioner] was subject

to continued coercion, we cannot assume that [Petitioner's] apparent acquiescence to a trial

strategy in which he did not testify was anything but voluntary." (alterations added)).

iv.   Claim 4: Whether Petitioner was denied his constitutional right to effective assistance
      of counsel when counsel failed to retain a gunshot residue expert

Petitioner argues that his Sixth Amendment right to effective assistance of counsel was

violated when trial counsel failed to adequately prepare for trial by failing to secure a gunshot

residue expert. According to Petitioner, he and trial counsel "had a conversation about possibly

retaining an expert in the field of gunshot residue because there was a burn, from the firearm, on

the blouse of the victim. The Petitioner believed, and advised trial counsel, that by investigating

and retaining an expert in gunshot residue, they could tell the jury how close the Petitioner was to

the victim during the struggle when the gun went off." [DE 1, p. 12]. Petitioner argues that "even

though trial counsel agreed with that strategy, trial counsel never retained said expert. Had trial

counsel acted efficiently, and retained said expert, a gunshot residue expert would have been able

to show the jury that the Petitioner's version of events is actually what happened." *Id.*

The State argues in response that a "gunshot residue expert's testimony would have merely

been cumulative" and that an "attorney need not pursue a fruitless investigation and not hiring an

expert under these circumstances was clearly not deficient performance." [DE 9, p. 34]. The State

further argues that Petitioner has not met either the deficient performance or the prejudice prong

of *Strickland*. *Id.*

The decision not to call an expert witness is not, in and of itself, "so patently unreasonable

a strategic decision that no competent attorney would have chosen this strategy." *Dorsey v.

Chapman,* 262 F.3d 1181, 1186 (11th Cir. 2001). "The petitioner must show that, under the

circumstances, no reasonable counsel would have chosen to forego an expert, and but for that

decision, the result of the proceeding would have been different." *Mekowulu v. United States*, No. 8:12-CR-170-T-27MAP, 2017 WL 6520472, at \*7 (M.D. Fla. Dec. 19, 2017) (citing *Strickland*, 466 U.S. at 687). Mere speculation the an expert witness' testimony would have changed the outcome at trial is insufficient. *See Holt v. Sec'y, Fla. Dep't of Corr.*, 489 F. App'x 336, 338 (11th Cir. 2012) (petitioner failed to show that the state trial court's denial of his ineffective-assistance-of-counsel claim based on a lack of prejudice was contrary to, or an unreasonable application of, *Strickland* because it was unclear how the outcome at trial would have been different if an expert witness had been sought to testify).

Petitioner already raised this issue in his Motion for Post-Conviction Relief [DE 10, Ex. 30, pp. 13-15] dated November 6, 2017. On November 9, 2018, the motion was denied. [DE 10, Ex. 32]. Petitioner timely appealed [DE 10, Ex. 33, 34], but, on October 17, 2019, the Fourth District Court of Appeal affirmed the trial court's decision without opinion. *Ho v. State*, 282 So. 3d 93 (Fla. 4th DCA 2019). A Mandate was issued on November 15, 2019 [DE 10, Ex. 41].

Petitioner simply has not established either deficient performance or prejudice. His arguments in support of this ineffective assistance of claim constitute pure speculation. Moreover, the one case cited by Petitioner in support of his position, *Hinton v. Alabama*, 134 S.Ct. 1081, 133 L.Ed.2d 1 (2014)[8], is completely distinguishable from the facts of this case.

---

[8] In *Hinton*, the Supreme Court explicitly stated, "[w]e wish to be clear that the inadequate assistance of counsel we find in this case does not consist of the hiring of an expert who, though qualified, was not qualified enough. The selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of [the] law and facts,' is 'virtually unchallengeable.' *Strickland*, 466 U.S., at 690. We do not today launch federal courts into examination of the relative qualifications of experts hired and experts that might have been hired." 571 U.S. at 274–75 (2014). This portion of the case actually supports the State and not Petitioner in this case. The Supreme Court held that "[t]he only inadequate assistance of counsel here was the inexcusable mistake of law—the unreasonable failure to understand the resources that state law made available to him—that caused counsel to employ an expert that *he himself* deemed inadequate." *Id.* at p. 275. In this case at hand, there is no allegation that counsel made a mistake of law by failing to hire an expert.

v.      Claim 5: Whether Petitioner was denied his constitutional right to effective assistance of appellate counsel when appellate counsel failed to argue that the trial court erred in finding that the state's failure to disclose evidence and the state's destruction of evidence was not a *Richardson* violation

Petitioner argues that his Sixth Amendment rights were violated when "appellate counsel failed to argue that the trial court abused its discretion by finding that a *Richardson* violation did not occur and instead, merely the destruction of evidence took place." [DE 16, p. 21]. He additionally argues that appellate counsel was "ineffective for failing to argue that the trial court abused its discretion by failing to find that the evidence, whether destroyed or intentionally withheld by the State, was prejudicial to the Petitioner's case and violated his due process right because he could not adequately prepare for trial." *Id.*

The State argues in response that appellate counsel "clearly found the trial court did not mishandle this issue; thus, it was not meritorious, and Petitioner was not likely to prevail on this issue on appeal. It was within trial counsel's discretion to make this determination and, even if counsel had found this issue to be meritorious, counsel was not required to raise it on appeal if the other issues raised were stronger." [DE 9, p. 41].

In reply, Petitioner contends that he properly alleged ineffective assistance of counsel regarding his appellate attorney. [DE 14, p. 6]. Petitioner maintains that any reasonable attorney who was acting as Petitioner's appellate counsel "would have seen the merit within the argument. Not only did the trial court erroneously fail to apply *Richardson*, but it further erred in finding that [Petitioner] had not established bad faith." *Id.* at p. 7.

Petitioner previously argued this issue in his petition alleging ineffective assistance of appellate counsel pursuant to Florida Rule of Appellate Procedure 9.141(d), filed with the Fourth District Court of Appeal. [DE 10, Ex. 39]. The petition was denied by the appellate court. [DE 10, Ex. 41].

In Florida, pursuant to Fla. R. Cr. P. 3.220(b), a prosecutor is required to disclose any material information which tends to negate the guilt of a defendant, including any similar fact evidence to be presented at trial under Fla. Stat. § 90.404(2). *See* Fla. R. Cr. P. 3.220; *see also Richardson*, 246 So.2d at 775. A *Richardson* hearing in Florida state court requires the court to address: (1) whether there was a discovery violation; (2) whether the violation was willful or inadvertent; (3) whether the violation was trivial or substantial; and (4) what effect the violation had on the ability for the opposing counsel to prepare for trial. 246 So.2d at 771. The purpose of a *Richardson* hearing is "to ferret out procedural prejudice" and to "decide whether the discovery violation prevented the aggrieved party from properly preparing for trial." *Raffone v. State*, 483 So.2d 761, 763 (Fla. 4th DCA 1986). "The law is clear that the manner in which a state trial court conducts proceedings regarding alleged discovery violations is a matter of state law and not cognizable in a writ of habeas corpus unless the hearing and ultimate ruling rendered the trial fundamentally unfair." *Floyd v. Bondi*, No. 16-CV-61891, 2018 WL 3422072, at *10–11 (S.D. Fla. May 14, 2018), *report and recommendation adopted,* No. 16-61891-CIV, 2018 WL 3421364 (S.D. Fla. July 13, 2018), *appeal dismissed sub nom. Floyd v. Fla. Attorney Gen.*, No. 18-13265-D, 2018 WL 7200250 (11th Cir. Dec. 6, 2018).

"As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," *Alderman v. Zant*, 22 F.3d 1541, 1555 (11th

Cir. 1994), since the state court "has wide discretion in determining whether to admit evidence at trial, and may exclude material evidence when there is a compelling reason to do so." *Lynd v. Terry*, 470 F.3d 1308, 1314 (11th Cir. 2006). *See also Baxter v. Thomas*, 45 F.3d 1501, 1509 (11th Cir. 1985) (federal habeas corpus is not vehicle to correct evidentiary rulings); *Boykins v. Wainwright*, 737 F.2d 1539, 1543 (11th Cir. 1984).

The trial court entered an order which discussed the evidentiary issue on March 21, 2014. [DE 10, Ex. 13, pp. 11-14]. Careful review of the record here reveals that the trial court properly disposed of the issue of the incomplete law enforcement surveillance video by declining to view it as a *Richardson* issue and instead viewing it as destroyed evidence issued under *California v. Trombetta*, 467 U.S. 479 (1984), *Arizona v. Youngblood*, 488 U.S. 51 (1988), *State v. Sobel*, 363 So.2d 324 (Fla. 1978) and *Kelley v. State*, 486 So.2d 578 (Fla. 1986). The trial court also found that the police had acted negligently, but not in bad faith. *Id.* at pp. 13-14. No showing has been made that the trial court's findings regarding the surveillance tape or that the trial court's failure to conduct a *Richardson* hearing rendered Petitioner's trial fundamentally unfair. In light of this, Petitioner has not and cannot show that his appellate counsel performed deficiently or that Petitioner was prejudiced pursuant to *Strickland*. He is entitled to no relief on this claim.

## VI.      CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b) to the Rules Governing § 2254

Proceedings.

After a careful review of the record, the Court finds that Petitioner is not entitled to a certificate of appealability. "A certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues she seeks to raise. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *see also Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised in the Petition are clearly without merit, Petitioner cannot satisfy the *Slack* test. Upon consideration of the record as a whole, the District Judge should deny a certificate of appealability.

## VII.     RECOMMENDATION TO THE DISTRICT JUDGE

A very careful review of the entire record establishes that Petitioner's claims are meritless, frivolous, and due to be denied for the reasons stated above. No evidentiary hearing is necessary. Petitioner's Petition is untimely. Further, Petitioner's Petition fails to establish any grounds for relief. Accordingly, the undersigned Magistrate Judge recommends that the District Judge **DENY** Petitioner Jimmy Ho's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [DE 1].

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Rodney Smith. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and

shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 5th day of November, 2020.

WILLIAM MATTHEWMAN
United States Magistrate Judge